[No. 1540.]

### JOSEPH BROWN *v.* THE STATE.

1. RECEIVING STOLEN PROPERTY—THEFT—INDICTMENT.—A conviction for knowingly receiving stolen property cannot legally be had under an indictment for theft. The principles enunciated in the analogous case of *Huntsman* v. *The State*, 12 Texas Court of Appeals, 619, reconsidered and approved by a majority of the court.
2. SAME—DISSENTING OPINION.—See the dissenting opinion of White, Presiding Judge, and the distinctions therein drawn between this case and *Huntsman* v. *The State*, 12 Texas Court of Appeals, 619.

APPEAL from the District Court of Travis. Tried below before the Hon. A. S. Walker.

The indictment charged that the appellant, on April 21, 1882, in the county of Travis, did unlawfully and fraudulently take, steal and carry away from the possession of Stephen Harrison, two horses, worth forty dollars each, the property of said Harrison, etc.

The case came to trial in November, 1883, and the jury returned a verdict finding the appellant guilty of receiving stolen property knowing it to have been stolen, and assessed his punishment at a term of nine years in the penitentiary.

*Walton & Hill*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE. There is but a single question in this case which we deem it necessary to determine, and that is: Under an indictment for *theft* can the defendant be lawfully convicted of the offense of receiving stolen property? This question has heretofore been decided by this court in the affirmative. (*Parchman* v. *The State*, 2 Texas Ct. App., 228; *McCampbell* v. *The State*, 9 Texas Ct. App., 124.) But since those decisions a similar case was before this court in *Huntsman* v. *The State*, 12 Texas Court of Appeals, 619, which was a case where the defendant, under an indictment for *theft*, was convicted of embezzlement. In an elaborate opinion in that case, Judge Hurt

reviews the authorities, and concludes that the conviction was not by " due course of the law of the land," and that Article 714 of the Code of Criminal Procedure, in so far as it provides that theft shall include embezzlement, is in contravention of the Constitution both of this State and of the United States.

We perceive no difference in principle between the question determined in that case and the one presented in this case. If the doctrine of the Huntsman case is correct, we think it must apply to and be decisive of this case. The constituents of the two offenses of theft and receiving stolen property are as essentially different as are those of theft and embezzlement. In theft, the accused is guilty of the fraudulent taking of the property of another, without his consent, and with the intent to deprive him of the value thereof, and to appropriate the same to the use and benefit of the person so taking; while the offense of receiving stolen property is constituted by receiving property which has been already fraudulently taken from the owner in such manner as to constitute theft, knowing the same to have been so acquired. A theft must be perfected before that of receiving stolen property can be perpetrated, and the receiver of the stolen property must be another person than the thief. (Penal Code, Arts. 724–743; *Foster* v. *The State*, 39 Ala., 233.)

After much investigation and reflection upon the question, we remain of the opinion that the principles announced in the Huntsman case, and the conclusions there arrived at, in so far as they bear upon the question before us, are sound and supported by reason and authority. We therefore re-affirm the opinion in that case, and refer to it for a full discussion of the question, and an exhaustive review of the authorities bearing upon it. With that opinion before us, it would be a work of supererrogation to enter upon a further elaboration of the subject, as we could add nothing of importance to what it contains.

We hold that the conviction in this case is illegal, and the judgment is reversed and the cause remanded.

White, Presiding Judge, dissenting. Our Penal Codes, adopted in 1857, professed and were adopted with a view of creating and establishing in Texas a full and complete system of criminal law, perfect in itself and wholly independent, so far as crimes and their character and nature were concerned, of any system of foreign laws written or unwritten. All offenses were defined in the Code, and the common law could only be resorted

to upon questions of evidence where the rule was not prescribed in the Code of Procedure, or when the common law was not in contravention of some rule therein prescribed. Many offenses as known at common law were radically changed in the Codes, some entirely omitted, and new ones added.

It will not be controverted or attempted to be denied, we suppose, that our Legislature had the right thus to change the law and to inaugurate, as it were, an entirely new system notwithstanding the Constitution of 1845, then in force, required that "no person should be holden to answer for any criminal charge but on indictment or information," and notwithstanding these terms "indictment" and "information" had acquired theretofore a well defined meaning and interpretation before they were thus used, a meaning which must have been considered and intended when the terms were used in the Constitution. At that time there also existed in the Constitution of the United States the imperative rule that the accused in all criminal prosecutions should "be informed of the nature and cause of the accusation against him." In the Code of Criminal Procedure thus adopted in 1857, it was expressly provided that certain offenses defined in the Code should include degrees, as, for instance: "1. Murder, which includes manslaughter and negligent homicide of the first and second degrees." "5. Theft, which includes all unlawful acquisitions of personal property punishable by the Penal Code." (See original Code of Crim. Proc., Art. 631.)

The question is, had the Legislature the right thus to declare that certain offenses should include others? Had it the right to define offenses differently from the definition of the offense as known at common law? and to limit or enlarge the constituent elements of the particular offense? We think this latter proposition will not be controverted or denied. But for this provision could a party be convicted of manslaughter under an indictment for murder in this State? That it could be done at common law, and had always been done, no one will deny. In a most able and conclusive opinion by Judge Clark in the Jennings case, the distinction between murder and manslaughter as known at common law and under our statute is clearly drawn with reference to indictment charging those offenses. He says: "In the case of murder the statute does not vary from the common law definition; and in such case the authorities, so far as we have been able to discover, are uniform to the effect that the common law indictment fills the full measure of the statute in charging the

offense. But in manslaughter the departure from the common law is most material in more than one essential particular. Not only is the penalty different but the offense itself is carved out of the common law offense, leaving a residuum which is provided for by our laws in a separate and different statute, and designated by a different name. *An indictment which charges the defendant with having unlawfully, willfully and feloniously killed another, cannot convey unmistakably to his mind the important and essential information that the State proposes to arraign and try him for having voluntarily slain a fellow being under the immediate influence of sudden passion arising from an adequate cause, but neither justified nor excused by law.*" (*Jennings* v. *The State*, 7 Texas Ct. App., 350.)

Where, then, do we get our authority to try and convict a party for manslaughter under an indictment for murder ? Such an indictment clearly does not put him on notice of the fact that he did the killing upon *adequate cause*, and adequate cause is the necessary feature which distinguishes manslaughter from all other degrees of culpable homicide, and makes it a specific substantive offense under the law. We cannot resort to common law and contemporaneous or antecedent construction, for the authority for these cannot avail where the conditions will not admit their application.

If these positions be correct, then the reasoning, dicta and argument of the Huntsman case (12 Texas Ct. App., 619), drawn from and based, as they are mainly, on outside authorities where the same conditions do not obtain, if applied, as would seem to be intended, to all crimes indiscriminately, would absolutely preclude the right to convict for manslaughter under an indictment for murder. I cannot concur in such a conclusion. When we severed our connection with the common law and adopted a system of our own, we not only had the right to invent even new names and definitions for crimes if we so desired, but we could and did have the right to declare what crimes should include degrees, and the scope and extent of the degrees included, and could try and convict for any offense so nominated as included, provided we gave the accused notice by the indictment, with reasonable certainty, of the nature and cause of the accusation. For instance, in manslaughter we notified him by the indictment for murder that we intended to hold him liable and amenable for any unlawful and felonious killing of the party slain. In theft, that he must answer for any fraudulent

acquisition of the property charged to have been stolen, and, having done this in the one case and the other, he could not complain.

The Huntsman case was one wherein the appellant was indicted for theft and convicted of embezzlement under the provisions of section 6, Article 714, Code of Criminal Procedure, which made embezzlement one of the degrees of theft. I concurred in the conclusion arrived at in the Huntsman case, that the Legislature had no power to make and could not make embezzlement as known to our law theft, because the vital element of theft was wanting, viz., the fraudulent acquisition of the property. Under our statute embezzlement is not the fraudulent *acquisition* but the fraudulent *conversion* of property the possession of which has been *lawfully* acquired. (Penal Code, Arts. 786 to 789 inclusive.) At common law an indictment for theft would sustain a conviction for embezzlement. (Archb. Crim. Prac. and Plead., 8 ed., p. 295.) At common law an indictment for theft would not authorize a conviction for receiving stolen property, knowing it to have been stolen. As to the two former, theft and embezzlement, the distinctions made by our statutes are so marked that the offenses cannot be reconciled or harmoniously assimilated. With regard to the latter, that is, theft and receiving stolen property, they both stand upon the same fundamental basis; they are fraudulent acquisitions of personal property, and our Legislature has said that *theft*, the more general and comprehensive term, shall embrace all fraudulent acquisitions of personal property. This, I think, the Legislature had the right, power and authority to do, just as it had the right to declare that murder should include all lesser degrees of culpable homicide. Our authority to find these lesser degrees of culpable homicide under an indictment for murder must be found mainly in the express power thus given by statute.

In receiving stolen property knowing it to have been stolen, every element of theft may be found and is embraced, save and except the isolated one that the property is not taken from the possession of the owner by the receiver. This additional fact is charged upon him in charging the theft, and he is, indeed, put upon notice of more than the State perhaps can or expects to prove, but because the notice embraces more than the proof *non constat* that he is not guilty of receiving stolen property. Besides this, the punishment for receiving stolen property is

made the same as theft (Penal Code, Art. 743), so closely are the two crimes allied under our system.

In *Counts* v. *The State*, decided, it is true, "in reconstruction days," it was held that, because under our statute theft includes all unlawful acquisitions of personal property, a defendant under an indictment for theft might be found guilty and convicted of driving from its accustomed range an animal not his own, and without the consent of the owner. (37 Texas, 593.)

In *Campbell* v. *The State*, 42 Texas, 592, Judge Moore held that whenever theft of cattle is charged, and the evidence is that the cattle were taken from their accustomed range, the Article, 2410*b*, Paschal's Digest, inflicting a less punishment. for theft, should be given in charge by the court, and in most cases the succeeding Article, 2410*c*, should be given; said clause imposing a punishment for removing cattle from their range where there is no fraudulent intent.

So nearly akin and identical are the two offenses of theft and receiving stolen property, that in Virginia it is declared by statute that a party guilty of the latter is by law "deemed guilty of the larceny thereof," and may be prosecuted and convicted as the thief. And in *Price* v. *The Commonwealth*, it is said: "The pleader may, if he choose, charge him specially as the receiver, and may insert several counts in the indictment charging the offense in both forms, as was done in this case. But, as a count for simple larceny would be sustained by the proof, whether it was the accused actually stole the thing, or that he received it knowing it to have been stolen, and as simplicity and brevity in pleadings, especially in criminal cases, is desirable, the better practice would seem to be to count in such cases as for simple larceny only." (21 Gratt. Va., 846.)

But I do not care further to elaborate the subject. I only wish to note my dissent, and give the reasons in as brief and pointed a manner as I can; and I further desired an opportunity of dissenting from certain *dicta*, general expressions and arguments in the Huntsman case not necessary to a decision of that case, which in my humble judgment are not applicable as rules to all cases indiscriminately under our Codes, as would appear to have been intended from the manner they are used.

I think the judgment in this case should be affirmed.

*Reversed and remanded.*